UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

APRIL DOWLING,

Plaintiff,

-against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, POLICE OFFICER
JASON PERNA, in his individual and official
capacities, and POLICE OFFICER VINCENT
SANDTORV, in his individual and official
capacities,

Defendants.

Docket No.:

**COMPLAINT**

***JURY TRIAL DEMANDED***

Plaintiff, by and through her attorneys, The Law Offices of Frederick K. Brewington, as and

for her Complaint against the Defendants respectfully sets forth:

<strong>PRELIMINARY STATEMENT</strong>

1.       This is a civil action seeking monetary relief, a declaratory judgment, compensatory

and punitive damages, disbursements, costs and fees for violations of the Plaintiffs' rights brought

pursuant to 42 U.S.C. § 1983 and other laws by COUNTY OF SUFFOLK, SUFFOLK COUNTY

POLICE DEPARTMENT, POLICE OFFICER JASON PERNA, in his individual and official

capacities, POLICE OFFICER VINCENT SANDTORV, in his individual and official capacities for

committing acts under color of law, depriving Plaintiff of rights secured by the Constitution and laws

of the United States, physical injury, rehabilitation, mental anguish, pain and suffering, monetary

damages, infliction of emotional distress, failure to render medical treatment, negligent supervision,

failure to intervene, creating danger, failure to protect and failure to properly train, in violation of

42 U.S.C. §1983 (including Municipal Liability and violations of the First, Fourth and Fourteenth

Amendment of the United States Constitution).

2.      Specifically, PLAINTIFF asserts that the DEFENDANTS (collectively and individually) inflicted physical and emotional harm, negligently, wantonly, recklessly, intentionally, and knowingly sought to and did wrongfully deprive PLAINTIFF of her Constitutional rights, pursuant to the above mentioned statutes and causes of action by committing acts under color of law and depriving the PLAINTIFF of rights secured by the United States Constitution and laws of the State of New York.

3.      Upon information and belief, COUNTY OF SUFFOLK and SUFFOLK COUNTY POLICE DEPARTMENT were negligent in training, hiring, and supervising POLICE OFFICERS JASON PERNA and VINCENT SANDTORV, thus leading to the harassment, malicious prosecution, excessive force, failure to act, failure to intervene, abuse of process, violation of right of association and dereliction of duty which directly led to PLAINTIFF'S injuries.

4.      Upon information and belief, Defendant POLICE OFFICERS JASON PERNA and VINCENT SANDTORV, without any reason except an intent to deprive PLAINTIFF of her rights, acted with the knowledge that their wrongful conduct and active, intentionally abusive conduct towards PLAINTIFF had the tacit authorization of the COUNTY OF SUFFOLK and SUFFOLK COUNTY POLICE DEPARTMENT.

5.      After said unlawful, intentional, discriminatory and abusive conduct, Defendant POLICE OFFICERS JASON PERNA and VINCENT SANDTORV contrived facts and false stories and failed to report their wrongful and intentional acts regarding Plaintiff. Plaintiff asserts that Defendants COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, POLICE OFFICERS JASON PERNA and VINCENT SANDTORV conspired, agreed, and planned to delay and/or omit the release of any information regarding their abuse of Plaintiff, and coverup their

wrongful participation in the egregious acts in order to avoid liability and responsibility.

6.     Upon information and belief, COUNTY OF SUFFOLK and SUFFOLK COUNTY POLICE DEPARTMENT are liable for the violations of rights, false arrest, discrimination, excessive force, failure to intervene, failure to protect, intentional indifference, intentional acts, unnecessary force and harassment which resulted in harm to Plaintiff because the COUNTY OF SUFFOLK and, SUFFOLK COUNTY POLICE DEPARTMENT have ignored, condoned, and permitted a pattern of unlawful, unequal and discriminatory policing, and the COUNTY OF SUFFOLK and SUFFOLK COUNTY POLICE DEPARTMENT failed to discipline the OFFICERS involved in such incidents, and failed to investigate, with the result that the police OFFICERS of SUFFOLK COUNTY POLICE DEPARTMENT  are encouraged to believe that they can violate the rights of persons such as PLAINTIFF with impunity, and that the COUNTY OF SUFFOLK and SUFFOLK COUNTY POLICE DEPARTMENT have acted and continue to act in violation of individual rights through their actions constituting a policy of police abuse, and misconduct.

## JURISDICTION AND VENUE

7.     This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and the Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 (3) and (4) and the aforementioned statutory and constitutional provisions.

8.     Venue for this action is the Eastern District of New York based on where the actions complained of herein occurred.

## PARTIES

9.     During all times mentioned in this Complaint, PLAINTIFF APRIL DOWLING (hereinafter "Ms. DOWLING" or "Plaintiff"is a citizen of the United States residing in the State of

New York, County of Suffolk.

10.    During all times mentioned in this Complaint, Defendant COUNTY OF SUFFOLK (hereinafter"COUNTY") is a duly constituted municipal corporation of the State of New York, and is/was the employer of the named police department and police personnel.

11.    During all times mentioned in this Complaint, Defendant SUFFOLK COUNTY POLICE DEPARTMENT (hereinafter "SCPD") is an agency/entity of the COUNTY.

12.    During all times mentioned in this Complaint, Defendant POLICE OFFICER JASON PERNA (hereinafter "PERNA" or "Officer PERNA") was a police OFFICER in the SCPD, and, at all times was a state actor acting in his official capacity and was employed by the COUNTY.

13.    During all times mentioned in this Complaint, Defendant POLICE OFFICER VINCENT SANDTORV (hereinafter "SANDTORV" or "Officer SANDTORV") was a police OFFICER in the SCPD, and at all times was a state actor acting in his official capacity and was employed by the COUNTY.

14.    During all times mentioned in this Complaint, Defendants COUNTY, PERNA, and SANDTORV, each of them, were acting under color of law, to wit, under color of Constitution, statutes, ordinances, laws, rules, regulations, policies, customs, and usages of the State of New York and/or County of Suffolk.

15.    During all times mentioned in this Complaint, Defendants COUNTY, PERNA and SANDTORV, each of them, separately and in concert, engaged in acts and omissions which constituted deprivation of the constitutional rights, privileges and immunities of the Plaintiff, and while these acts were carried out under color of law, the Defendants had no justification or excuse in law; the acts were instead gratuitous, illegal, improper and unrelated to any activity in which law

-4-

enforcement OFFICERS may appropriately and legally engage in the course of protecting persons and property, or in ensuring civil order.

16.     During all times mentioned in this Complaint, Defendants COUNTY, PERNA and SANDTORV had the power and the duty to intervene upon the other Defendants and prevent them from violating the law and the rights of Plaintiff. Each of the Defendants failed and refused to perform that duty and failed and refused to intervene on the other Defendants, thereby becoming a party and acting in concert to harm and bring about the injuries inflicted upon Plaintiff.

17.     During all times mentioned in this Complaint, Defendants had the power and the duty to conduct a full and fair investigation of the incidents for which the Plaintiff complained as well as the resulting injuries suffered by Plaintiff due to the actions and inactions of SUFFOLK COUNTY POLICE OFFICERS, PERNA and SANDTORV.

## STATEMENT OF FACTS

18.     Plaintiff's harassment at the hands of Defendants began when Plaintiff purchased a Lexis automobile in October of 2019. On that date Plaintiff promptly and properly registered and insured the vehicle. On that same day, in order to purchase the necessary screws to secure the new license plate to her vehicle, Plaintiff drove to Home Depot located at 399 William Floyd Pkwy, Shirley, NY, a short distance from Plaintiff's home.

19.     Plaintiff was accompanied to Home Depot by her then boyfriend Jerome Cooper, an African American man (hereinafter "Mr. Cooper"). Plaintiff parked in a designated parking space and purchased the screws from Home Depot. After exiting the store, Plaintiff with the assistance of Mr. Cooper began to properly secure the license plate to Ms. DOWLING's vehicle. As Ms. DOWLING secured the license plate she noticed a SCPD vehicle behind her with its emergency

lights flashing. In that vehicle was SCPD Officer JASON PERNA, and that police vehicle came to a stop directly behind Plaintiff's vehicle.

20.     Defendant SCPD Officer JASON PERNA exited the police vehicle and made the false statement to Plaintiff that she did not put on her signal light before turning. This statement puzzled Plaintiff as she had not seen the SCPD vehicle before entering the store or after exiting the store. Officer PERNA then asked Plaintiff what it was that she was doing. Ms. DOWLING explained that she was affixing her license plate to her new vehicle.

21.     As Ms. DOWLING spoke with Officer PERNA, he began looking into her vehicle and observed Mr. Cooper video recording the interaction. Mr. Cooper asked Officer PERNA whether he was going to give them a ticket, to which PERNA responded that since Mr. Cooper was filming, he was giving them a ticket. PERNA then returned to his vehicle and yelled at Ms. DOWLING, "Sell out!"[1] before driving off. PERNA did not issue a ticket or citation to Plaintiff on that day.

22.     Ms. DOWLING was shocked by this overt act of bias and felt abused by the intentional attempt to shame her for her associating and being in the company of a Black man.

23.     At approximately 8:30 P.M. on August 28, 2020, while Plaintiff was driving her Lexis on Montauk Highway in Shirley-Mastic, Officers PERNA and SANDTORV, who were in a SCPD police vehicle, followed Plaintiff's vehicle as she left the Best Market parking lot located at 800 Montauk Highway, Shirley, New York near Plaintiff's home.

---

[1] A "sellout" is a person who betrays something to which she is said to owe allegiance. Here, while intended to relate to who Plaintiff had chosen to date and associate with, the phrase is wrongfully applied or misapplied in the racial sense.

24.     On that day, as Ms. DOWLING drove along Mastic Blvd., she pulled her vehicle over to the side of the road in order to allow Mr. Cooper to enter her vehicle. The SCPD vehicle continued to follow Plaintiff. Once Mr. Cooper was in Plaintiff's vehicle, the officers immediately signaled, using their police lights, for Plaintiff to pull over.

25.     Ms. DOWLING was concerned by the actions of SCPD, as was Mr. Cooper. Mr. Cooper began yelling at Plaintiff to not pull over. As a result of her fear and Mr. Cooper's insistence, Plaintiff continued to drive as she looked for a place of safety to pull over.

26.     Plaintiff drove with the Officers behind her at a speed of approximately 20 miles per hour for approximately three (3) blocks. Plaintiff circled one of the blocks and as she drove, she obeyed all other traffic rules. As Plaintiff drove, Officer PERNA began driving closely alongside the driver's side of Plaintiff's vehicle forcing her to her right and onto the grass, stopping her vehicle on Mastic Boulevard.

27.     Upon Ms. DOWLING's vehicle stopping, Mr. Cooper jumped out of Plaintiff's vehicle and ran. Officer SANDTORV ran after Mr. Cooper. Officer PERNA then came to the drivers side of Plaintiff's vehicle, opened the door and pointed his gun at Ms. DOWLING'S head.

28.     As he continued to point his gun at Plaintiff, Officer PERNA asked Ms. DOWLING if she had "anything on her." Then, without permission and with the gun still pointed at Ms. DOWLING, Officer PERNA searched Plaintiff by patting her down. Plaintiff was then handcuffed and put in a sitting position on the ground for more than one hour while Officer SANDTORV pursued Mr. Cooper. Officers PERNA and SANDTORV carried out these actions all without indicating to Plaintiff why Officer SANDTORV had his gun pointed at Ms. DOWLING, why Ms. DOWLING was subjected to a search and why Ms. DOWLING was handcuffed, restrained and

detained. Officer PERNA then searched Plaintiff's vehicle without her permission. Officer

SANDTORV came back yelling to Plaintiff , "You fucking made us chase you", which was untrue.

29.     Officer SANDTORV falsely informed Plaintiff that she would be released after the

Officers searched her vehicle. However, Ms. DOWLING was not released. Rather she was taken to

the 7th Precinct.

30.     Officer SANDTORV drove Plaintiff's vehicle, while Officer PERNA transported

Plaintiff to the 7th Precinct in the police vehicle. On the way to the Precinct, Officer PERNA yelled

into the police radio that there were guns, drugs and kids at the house, all of which was fabricated.

31.     Once Plaintiff arrived at the 7th Precinct, Ms. DOWLING was taken to an interrogation

room where she was questioned regarding the injury to her foot. Plaintiff explained that she jumped

out of a window in her home to get away from Mr. Cooper during an intense domestic incident and

injured her foot. In an attempt to be given a reason to arrest Mr. Cooper, uniformed personnel at the

7th Precinct suggested Ms. DOWLING fill out a domestic violence report. Ms. DOWLING was held

in the 7th Precinct until approximately 4:30 A.M. During the eight hours that Plaintiff was wrongfully

detained, no charges were filed against her at that time.

32.     Knowing that his actions were wrongful, the following day Officer SANDTORV

went to Plaintiff's home, knocked on her door and gave Plaintiff two tickets for VTL 0375 2A1,

Violation Lights and VTL 0402 01, License Plate Violation for the August 28, 2020 traffic stop.

Officer SANDTORV informed Plaintiff that he had to give her the tickets to show why he pulled

Plaintiff over. Both of those tickets were pretextual and fabrications.

33.     As of the filing of this Complaint, those pretextual and fabricated charges, are yet to

be resolved and most recently, Plaintiff received mail from the Suffolk County Traffic and Parking

Violations Agency dated April 7, 2023 that informed her that "An arraignment has been scheduled on your case as indicated". That same letter set a date for May 16, 2023 for the arraignment, which did not take place. Most recently Plaintiff has been informed that she must now appear on July 18, 2023 to be arraigned on these false charges.

34.     The fact that these ticket came the day after the abusive acts of Defendants and were delivered to Plaintiff's home by the offender who admitted that he had to give her the tickets to show why he pulled Plaintiff over is telling. The issuance of these ticket were an abuse of process and only issued by Defendant SANDTORV in an attempt to avoid investigation, supervision, discipline and potential criminal charges being leveled against them.

35.     Defendant Officers PERNA and SANDTORV were aware, or should have been aware, that the baseless traffic stops and unwarranted tickets which forced interactions between Plaintiff and police, as well as between Plaintiff's then boyfriend Mr. Cooper and SCPD were not only harassing to Plaintiff, but also placed her in an increased level of fear from both the police and fear of potential domestic abuse. However, the meritless traffic stops and police harassment did not stop, it only increased.

36.     In or about the month of September or October of 2020, during one harassing vehicle traffic stop of Plaintiff by Defendant Officers PERNA and SANDTORV, the officers employed the emergency vehicle lights of their SCPD vehicle and pulled over Plaintiff's vehicle while she was legally driving on William Floyd Parkway. During this stop, Andrea Mills, Plaintiff's eighteen year old daughter was a back seat passenger in Plaintiff's vehicle while Plaintiff drove and Mr. Cooper sat in the front passenger seat.

37.    As Officers SANDTORV and PERNA exited their vehicle, Ms. DOWLING said aloud, "Now who is it? Is it PERNA?" As she observed that it was again Officer PERNA pulling her over, she then saw the other officer exiting the SCPD vehicle and exclaimed, "and SANDTORV." Both officers exited their vehicle. Officer PERNA approached the driver's side and Officer SANDTORV approached the passenger side where Mr. Cooper sat. Mr. Cooper began video recording shortly after noticing the activation of the police emergency lights on the officer's vehicle.

38.    Officer PERNA informed Ms. DOWLING that she was "driving a little fast" and asked for her license. Ms. DOWLING responded that Officer PERNA knew who she was and proceeded to give Officer PERNA her driver's license. After Officer SANDTORV asked Mr. Cooper for his license, Officer SANDTORV asked if there was "an active Order" between Ms. DOWLING and Mr. Cooper. When told by Mr. Cooper there was no such Order, Officer SANDTORV declared that he was going to "run the car" and determine whether there was an active Order.

39.    Officer PERNA then asked Ms. DOWLING if anyone was smoking in the car because he smelled marijuana. Everyone in the vehicle informed the officers there was no marijuana usage or smell of anything resembling marijuana in Ms. DOWLING'S vehicle.

40.    Officers SANDTORV and PERNA went to the back of Plaintiff's vehicle and Officer SANDTORV came to the driver's side of the vehicle and attempted and failed to open the driver's side door.  Officer SANDTORV then instructed Ms. DOWLING to get out of her vehicle. Now in increased fear, and deeply concerned for her safety and the safety of her daughter and Mr. Cooper, Ms. DOWLING declined to get out of the vehicle.

41.    Officers SANDTORV and PERNA walked back to their SCPD vehicle and entered. Officer PERNA eventually walked back to the driver's side of  Plaintiff's vehicle and said that

Plaintiff and Mr. Cooper were not supposed to be talking to each other. This was not a true statement. PERNA walked back to the SCPD vehicle and both Officers drove away without issuing any tickets to Plaintiff or anyone else in the vehicle and without arresting anyone. Defendant Officers provided Plaintiff no documentation regarding this traffic stop or explaining their actions.

42.     Plaintiff and her daughter were placed in extreme fear by the actions and statements of Defendant Officers SANDTORV and PERNA.

43.     By this time Plaintiff's children were aware and had been told of the continuous incidents of traffic stops by Officers PERNA and SANDTORV and were concerned for the safety of their mother. Ms. Mills also video recorded a portion of this harassing traffic stop.

44.     On March 19, 2021 at approximately 8:40 a.m. Plaintiff drove her daughter Ms. Mills to work at the Rise and Grind Kitchen and Coffee Bar on Main Street in Patchogue, New York. As Ms. DOWLING drove back home alone, legally traveling along Montauk Highway to Smith Street, she observed a police vehicle at the intersection of Mastic Boulevard which was perpendicular to the route she was driving.

45.     As Plaintiff continued on her way home, she crossed the train tracks, turned left onto Northern Boulevard, and then turned right onto Ridge Road, before finally making a left turn into her driveway.  Plaintiff was certain that she was obeying all rules and regulations of the vehicle and traffic law.

46.     On that date, at approximately 9:15A.M., as Plaintiff entered her driveway located at 160 Northern Boulevard, Shirley New York, a SCPD vehicle driven by Officer SANDTORV entered into the driveway behind her. Before she could exit her vehicle, Officer SANDTORV was at her driver's side window and exclaimed, feigning surprise, "Oh, it's you." Officer SANDTORV

instructed Ms. DOWLING to remain in her vehicle and informed Ms. DOWLING that she was stopped for driving too closely to another vehicle. This statement was false.

47.     Mr. Cooper came out of Plaintiff's house when he realized that Ms. DOWLING had parked her vehicle but did not come into her house. Once outside, Mr. Cooper began video recording the interaction between Officer SANDTORV and Ms DOWLING on his phone.

48.     When Officer SANDTORV again demanded Ms. DOWLING show him her auto insurance information, Plaintiff informed Officer SANDTORV that her insurance information was on her phone. Plaintiff did not want to give SANDTORV her phone as SANDTORV was aware that there was video of him on Plaintiff's phone and Plaintiff was fearful that SANDTORV may destroy her phone and the evidence of his interactions with her. Plaintiff told SANDTORV to look up her information as Officer SANDTORV already knew her name.

49.     Plaintiff began to fear for her life as she recalled the traffic stop incident where Officer SANDTORV's partner, Officer PERNA, pointed his gun at her head. Ms. DOWLING observed Officer SANDTORV calling someone and this increased her fear for her safety and she decided to go inside of her home.

50.     As Ms. DOWLING began to exit her vehicle, Officer SANDTORV exited his vehicle and told Plaintiff that she was not going into her home. On this day Ms. DOWLING had a broken toe and was wearing a walking boot. Plaintiff continued moving towards the door to her home in fear for her life as she intensely feared the repeat of the incident when Officer PERNA put his gun to her head. Knowing that SANDTORV called someone, Plaintiff feared that SANDTORV called his partner Officer PERNA.

-12-

51.   Plaintiff opened her sliding door and stepped into her home. As Plaintiff was in her home, Officer SANDTORV grabbed her by both her arms, pulled her out of her home and violently threw her down onto the ground and on top of the cellar doors which are located to the left of Plaintiff's sliding door and a step down from the platform used to enter her home.

52.   When Plaintiff hit the ground, Officer SANDTORV was still holding Plaintiff's leg with the broken toe. As Officer SANDTORV stood over Ms. DOWLING in a menacing manner, Plaintiff repeatedly yelled for Officer SANDTORV to get off her and that he was a cop and not supposed to touch her.

53.   Fearing for her life and safety, Ms. DOWLING eventually rose to her feet and told Officer SANDTORV that she was not going anywhere, that she was not going back into her home and that she would stay where she was.

54.   Plaintiff, in fear, yelled at Officer SANDTORV that since he pulled her over for following too closely, that he should just give her a ticket and leave her alone. Officer SANDTORV, while continuously clenching and unclenching his left fist, told Plaintiff to go back into her car while he wrote her a ticket.

55.   In the past, Officer SANDTORV came to Plaintiff's house and hand delivered the alleged traffic violation tickets to Ms. DOWLING. Plaintiff did not understand why SANDTORV did not use the mailbox or simply give her a ticket.

56.   SANDTORV appeared out of control and ready to harm Ms. DOWLING as he clenched and unclenched his left fist and continuously ground his right fist into his left hand. SANDTORV then made a call on his radio. SANDTORV's continued action was viewed by Plaintiff as a further threat to Plaintiff and only increased her fear for her safety from this officer who had

demonstrated an animus towards her, continually harassed her in the past, and on that day violated her, yanked her out of her home and threw her onto the ground.

57.    Officer SANDTORV continued to grind his fist into his hand and instructed Ms. DOWLING to go wait in her car. Ms. DOWLING informed Officer SANDTORV that she was going to report him and call a lawyer. Suddenly, Ms. DOWLING's worst fears became real as Officer PERNA arrived at Plaintiff's residence.

58.    At that moment Officer PERNA told Officer SANDTORV that "you just gotta grab her, okay" and SANDTORV began to advance toward Plaintiff. Plaintiff yelled "You just gotta grab me? You don't gotta grab me. For what? They are trying to lock me up. For what? For what?" All the while SANDTORV continued to advance on Plaintiff saying "relax, relax."

59.    Now that both Officers who previously harassed her were at her home Plaintiff was consumed with fear.  These two Defendant Officers made racist statements and further abused Plaintiff.  Plaintiff was horrified and in an extreme heightened state of dread because one of these officers had put a gun to her head, and the other used physical force to pull her out of her home and had just thrown her to the ground.

60.    Plaintiff, in heightened fear, asked to speak with a Sergeant. Officer SANDTORV tried to grab Plaintiff's phone, which Plaintiff threw to Mr. Cooper. Officers SANDTORV and PERNA each grabbed one of Plaintiff's arms and roughly handcuffed her behind her back. Defendant Officers walked Plaintiff to Officer SANDTORV's marked police vehicle and put Plaintiff in the back seat.

61.    Plaintiff was then transported to the 7th Precinct. Plaintiff informed the Defendant Officers on the way to the Precinct that she was menstruating, and needed a feminine hygiene

product. Officer PERNA responded by sarcastically saying, "Oh, you have your period?". At the Precinct, Plaintiff reiterated her request for feminine hygiene products by stating that the Defendants should get her a sanitary napkin. In an attempt to torment Plaintiff, Officer PERNA then seated her on a hard stool. The officers ignored her requests, did not seek the assistance of a female officer and did not provide Plaintiff any relief for her female hygienic needs.

62.     Plaintiff told the supervisory staff at the 7th Precinct that she was thrown on the ground by Defendant Officer SANDTORV. Ms. DOWLING remained very angry while at the Precinct as different officers, including Officer Antonelli, came into the room in which she was being held, leered at Plaintiff and laughed at her. One officer came and threatened Plaintiff that if she did not keep quiet, she would be transferred to the 4th Precinct, held for Resisting Arrest, and not released until the next day.

63.     Ms. DOWLING yelled back,"Arrested for what? Driving too close to another car?". Officer SANDTORV kept coming into the holding room to harass Ms. DOWLING. Photos were taken as Plaintiff protested and described being thrown to the ground by Officer SANDTORV. No complaint was taken from Plaintiff at that time.

64.     Officer SANDTORV came back to the location where Plaintiff was held to gloat approximately seven (7) times throughout Plaintiff's time in the Precinct. Officer SANDTORV pretended not to know Plaintiff's name and continued to make comments and engage in posturing solely intended to harass Plaintiff.

65.     Later on, a female officer at the 7th Precinct, who Plaintiff recalls as being of Latin descent, searched Plaintiff and told her to keep quiet for her own safety.

66.     After being detained some five (5) hours, Ms. DOWLING was released on her own recognizance between approximately 2:00 P.M. and 2:30 P.M. Plaintiff called Mr. Cooper for a ride home, however, Mr. Cooper was unable to help Ms. DOWLING. Officer SANDTORV sarcastically offered to hire a cab for Plaintiff.

67.     Plaintiff experienced continuous harassment from the SUFFOLK COUNTY POLICE DEPARTMENT from which she sought relief and assistance. Plaintiff has sought to carefully record and document as many of the several interactions she had with Defendant Officers SANDTORV and PERNA.

67.     On occasions where Plaintiff sought relief from SCPD, Defendant SCPD denied Plaintiff the opportunity to make a formal complaint as Defendants promised, but never sent the requested staff to take the complaint information as Plaintiff requested, despite saying that they would.

68.     On March 26, 2021 Plaintiff hired a criminal attorney to defend her against the false charges Defendants alleged in order to cover-up their harassment, unnecessary and excessive force against Plaintiff. Those charges included PL 195.05, Obstruction of Governmental Administration -2, VTL 1129, Following Too Closely, VTL 1163, Signal Less than 100 feet, and VTL0375 , Equipment Violation: Obstructed Vision.

69.     The criminal attorney suggested Ms. DOWLING file an Internal Affairs Investigation. Ms. DOWLING did file Internal Affairs Bureau File # 21-119i as a result of Officer SANDTORV pulling her out of her home and throwing her to the ground. Not suprisingly, and despite the actions of Officer SANDTORV being recorded, the Internal Affairs Investigation resulted in an unfounded claim against Defendant Officers.

70.     Defendants continuous harassment of Plaintiff also included an incident on May 19, 2022, when SCPD Officers arrived at Plaintiff's home in an unmarked vehicle and alleged they were looking for a person named Mia regarding a domestic violence issue. Defendants were, or should have been, well aware that there was never anyone named Mia living at Ms. DOWLING's address.

71.     Additionally, Officers PERNA and SANDTORV followed Plaintiff while she traveled in her vehicle on several other occasions, including the morning of April 28, 2022 and the morning of May 14, 2022. Another harassing incident occurred when Officer Antonelli, the officer who entered the holding room in the 7th Precinct and laughed at Plaintiff, pulled into a gas station in Shirley, parked perpendicular to Plaintiff's vehicle and sneered at Plaintiff while watching Plaintiff pump gas into her Lexis vehicle.

72.     As a result of the constant harassment, the unnecessary and excessive force, false arrest and the failure of SCPD to address her complaints against the officers, Plaintiff has been seeing a therapist to address the resultant psychological issues she endures. Among other things, Plaintiff suffers from anxiety, and intense fear when she sees police officers and police vehicles. Plaintiff's heart begins to race whenever she sees police officers from the 7th Precinct.

73.     Many times when she passes by a police vehicle within the 7th Precinct, the police vehicles begin to follow her, even when they have to turn around to do so.

74.     Plaintiff's children are affected and worried for their Mother's safety. The entire family is not sure what may happen with police interactions with Plaintiff in the future. Plaintiff's children constantly call her if she is a few minutes late getting home. Plaintiff's children express their concern that Plaintiff may have been stopped and held or arrested again by SCPD.

75.    On February 15, 2023, the false charges of Obstruction of Governmental Administration -2, Following Too Closely, Signal Less than 100 feet, and Equipment Violation: Obstructed Vision alleged against Ms. DOWLING by Defendant Officers to cover-up their unnecessary and excessive force were dismissed and sealed.

**AS FOR A FIRST COUNT**
**42 U.S.C. § 1983**
**UNREASONABLE AND EXCESSIVE USE OF FORCE, FAILURE TO INTERVENE**

76.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 75 of this Complaint with the same force and effect as though fully set forth herein.

77.    On March 19, 2021 Plaintiff drove her daughter to work at the Rise and Grind Kitchen and Coffee Bar on Main Street in Patchogue. As Ms. DOWLING drove back home alone, she traveled along Montauk Highway to Smith Street she observed a police vehicle at the intersection of Mastic Boulevard which was perpendicular to the route she took.

78.    Plaintiff continued across the train tracks, turned left onto Northern Boulevard, turned right onto Ridge Road, before finally making a left turn into her driveway while obeying all rules and regulations of the vehicle traffic law, at approximately 9:15AM.

79.    As Plaintiff entered her driveway, a police vehicle driven by Officer SANDTORV entered into the driveway behind her. Before she could exit her vehicle, Officer SANDTORV was at her driver's side window and exclaimed, feigning surprise, "Oh, it's you." Officer SANDTORV instructed Ms. DOWLING to remain in her vehicle and informed Ms. DOWLING that she was stopped for driving too closely to another vehicle. Officer SANDTORV then asked Ms. DOWLING,

although he knew the answer from his previous stops of Ms. DOWLING while she drove the same Lexis, whether the vehicle was registered to her.

80.    Mr. Cooper came out of Plaintiff's house when he realized that Ms. DOWLING parked her vehicle, but did not come into her house. Once outside, Mr. Cooper began video recording the interaction between Officer SANDTORV and Ms DOWLING on his phone.

81.    When Officer SANDTORV again asked Ms. DOWLING for her auto insurance information, Plaintiff informed Officer SANDTORV that her insurance information was on her phone. Plaintiff did not want to give SANDTORV her phone as SANDTORV was aware that there was video of him on Plaintiff's phone and Plaintiff feared that SANDTORV may destroy her phone and the evidence of his interactions with her. Plaintiff told SANDTORV to look up her information as Officer SANDTORV already knew her name.

82.    Plaintiff began to fear for her life as she recalled the traffic stop incident where Officer SANDTORV's partner, Officer PERNA, put his gun to her head. Ms. DOWLING observed Officer SANDTORV calling someone and this increased her fear for her safety and she decided to go inside of her home.

83.    Previously the tickets that PERNA and SANDTORV issued were either put in Plaintiff's mailbox by Officer SANDTORV or handed directly to Plaintiff in her home by Officer SANDTORV. Plaintiff did not understand why SANDTORV did not use the mailbox or write a ticket and hand it to her this time as he had done on the morning after the August 2020 traffic stop and interaction.

84.    As Ms. DOWLING began to exit her vehicle, Officer SANDTORV exited his vehicle and told Plaintiff that she was not going into her house. On that day Ms. DOWLING had a broken

toe and was wearing a walking boot. Plaintiff continued moving towards the door to her home in fear for her life as she intensely recalled when Officer PERNA put his gun to her head. Because SANDTORV called someone, Plaintiff feared SANDTORV called his partner Officer PERNA.

85.    Plaintiff opened her sliding door and stepped into her home. Just then, Officer SANDTORV grabbed her by both her arms, pulled her out of her home and threw her down onto the ground and on top of the cellar doors which are located to the left of Plaintiff's sliding door and a step down from the platform used to enter the home.

86.    When Plaintiff hit the ground, Officer SANDTORV was still holding Plaintiff's leg with the broken toe. As Officer SANDTORV stood over Ms. DOWLING, Plaintiff repeatedly yelled for Officer SANDTORV to get off of her and that he was a cop and not supposed to touch her.

87.    Ms. DOWLING eventually rose to her feet and told Officer SANDTORV that she was not going anywhere, that she was not going back into her home and that she would stay where she was. Officer SANDTORV made a call on his radio while continuously grinding his right fist into his left hand. This continued action was viewed by Plaintiff as a further threat to Plaintiff and only increased her fear for her safety from this officer who had continually harassed her before yanking her out of her home and throwing her onto the ground.

88.    Plaintiff, in fear, yelled at Officer SANDTORV that since he pulled her over for following too closely, to just give her a ticket and leave her alone. Officer SANDTORV continued to grind his fist into his hand and instruct Ms. DOWLING to go wait in her car. Ms. DOWLING informed Officer SANDTORV that she was going to report him and call a lawyer. Suddenly, Officer PERNA arrived at Plaintiff's residence.

89.     Now that both Officers who previously harassed, made racist statements and abused Plaintiff were at her residence, and one of whom put a gun to her head, and the other pulled her out of her home and threw her to the ground, Plaintiff was horrified and in an extreme heightened state of fear. At that moment Officer PERNA told Officer SANDTORV that "you just gotta grab her, okay" and SANDTORV began to advance toward Plaintiff. Plaintiff yelled "You just gotta grab me? You don't gotta grab me. For what? They are trying to lock me up. For what? For what?" All the while SANDTORV continued to advance on Plaintiff saying "relax, relax."

90.     Plaintiff, still in fear, asked to speak with a Sergeant. Officer SANDTORV tried to grab Plaintiff's phone, which Plaintiff threw to Mr. Cooper. Officers SANDTORV and PERNA each grabbed one of the Plaintiff's arms and handcuffed her behind her back. Defendant Officers walked Plaintiff to Officer SANDTORV's marked police vehicle and put Plaintiff in the back seat.

91.     Plaintiff was transported by Defendant Officers to the 7th Precinct.

92.     Defendants COUNTY, and SCPD knew that Plaintiff was being subjected to abuse and wrongful police action, but failed to take any action to protect Ms. DOWLING from the unnecessary and unlawfully violent assault by Defendant SANDTORV or the abusive and violent actions of Defendant PERNA.

93.     Defendants SANDTORV and PERNA failed to intervene and failed to take any action to prevent this unlawful behavior committed by each of them in the presence and/or with the knowledge of the other.

94.     Upon information and belief, unlawful use of excessive force was ordered, condoned and authorized by Defendant COUNTY and Defendant SCPD, with a callous, deliberate indifference to Plaintiff's known constitutional rights.

95.     Upon information and belief, each Defendant took an active role in creating and manufacturing the allegations made against Plaintiff in an intentional attempt to mask and coverup their wrongful actions and abuses of Plaintiff.

96.     Each of the Defendants acting under color of law, acted separately and in concert and without authorization of law. Each of the Defendants, separately and in concert with each other, acted willfully, knowingly and purposefully with the specific intent to deprive Plaintiff of her right to freedom from excessive force. Each Defendant engaged in, condoned and/or a failed to intervene against other Defendants wrongful acts against Plaintiff. All of these rights are secured to Plaintiff by the provisions of the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, as well as the First and Fourth Amendments to the Constitution of the United States, and by 42 U.S.C. § 1983.

97.     Defendants SANDTORV and PERNA, whose actions were authorized and/or condoned by Defendants COUNTY and SCPD, knew or should have known, each was violating laws of the State of New York and those statutory and constitutional rights set forth herein, causing harm to Ms. DOWLING.

98.     As a direct and proximate result of the aforesaid acts of the Defendants, Plaintiff suffered great physical harm, mental anguish and violations of rights from then until now and Plaintiff will continue to so suffer in the future, having been greatly humiliated and mentally injured, as a result of the aforesaid acts of Defendants.

99.     Plaintiff was forced to incur, and continues to incur, great expense due to the filing of this Complaint, medical treatment, attorney's fees, and other expenses in addressing the multiple wrongful and abusive acts by Defendants, which have been a serious burden on Plaintiff.

100.     That by reason of the foregoing, Plaintiff suffers significant physical and emotional damages, distress, pain, suffering, and has been exposed to disgrace, public humiliation and embarrassment, and was deprived of her constitutional rights and has been damaged in the sum of in excess of Five Million ($5,000,000.00) including the cost of this action, attorney's fees pursuant to 42 U.S.C. § 1988, and punitive damages.

## AS AND FOR A SECOND COUNT
## 42 U.S.C. § 1983 - FALSE ARREST, FABRICATION OF EVIDENCE, MALICIOUS PROSECUTION AND ABUSE OF PROCESS

101.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 100 of this Complaint with the same force and effect,  as if same were fully set forth herein.

102.     The wrongful conduct against Plaintiff  were improper, false, and were an attempt to disguise and coverup the wrongful actions of the Defendants SANDTORV and PERNA, in their individual capacities, causing a deprivation of Plaintiff's rights, privileges, and/or immunities secured by the Constitution and laws.

103.     Under color of law, the Defendants deprived Plaintiff of her Fifth, Sixth and Fourteenth Amendment rights not to be deprived of life, liberty, or property without due process of law, and of her Fourth Amendment right to be free from unlawful searches and seizures by falsely arresting, wrongfully detaining, unlawfully assaulting, maliciously prosecuting, and falsely holding Plaintiff for no reason and for which there is no evidence or substantiation of any kind.

104.     Plaintiff was placed in fear for her life, falsely seized, falsely detained and falsely arrested, subjected to fabrication of evidence, subjected to abuse of process, issued pretextual and malicious summonses after Defendant Officers realized that their arrest and false allegations of

Plaintiff would not withstand scrutiny, including the action of Defendants subjecting Ms. DOWLING to painful excessive and unreasonable force, demeaning and dehumanizing actions and unlawful search and seizure.

105.   Plaintiff was placed in fear of her life, falsely arrested, falsely seized, detained, and held for an unreasonable period of time against her will without probable cause, reasonable suspicion, justification, explanation or rationale for such detention.

106.   While Plaintiff was unlawfully detained, Defendant Officers refused to provide information and documentation regarding Plaintiff's wrongful arrest and prosecution and placed Plaintiff in a state of fear which was elevated upon the use of fabricated traffic infractions used as a pretext for Plaintiff's arrest and detention.

107.   The continued stops, abuses, seizures, arrests and issuance of the pretextual tickets was part of an on going level and pattern of abuse and was carried out by Defendant Officers SANDTORV and PERNA with a callous, deliberate indifference to Plaintiff's known constitutional rights, all of which was condoned, supported and allowed by Defendants COUNTY and SCPD. The false charges leveled against Plaintiff from that incident were all dismissed and were issued to her for unlawful purposes and the abuse of process by SANDTORV and PERNA knowing that their actions were illegal and would subject them to discipline and potential criminal liability.

108.   The issuance of those tickets on two different occasions and underlying claims made in those tickets were a fabrication, pretext for continued abuse, harassment and mistreatment as is often the case with unwarranted traffic stops by SCPD.

109.   The accusations of wrongful actions and criminal charges leveled against Plaintiff by Defendants SANDTORV and PERNA were false and an actual employment of regularly issued legal

process to teach Ms. Dowling a lesson and punish her for associating with a Black man and being a "sell out" to her White race, and to frighten Plaintiff from making complaints against them.

110.    Defendants SANDTORV and PERNA took their actions against Plaintiff with intent to do harm without justification, legal authority or justifiable excuse. In doing so they sought to obtain the collateral objective of punishing Plaintiff for her association and relationship with a Black man, which was not a legitimate purpose and was not the intended purpose of the criminal charge of Obstruction of Governmental Administration.   In doing so, Defendants sought to avoid punishment for their race based discrimination, abuse of their police authority and powers, including departmental punishment as well as criminal prosecution. This is all in addition to cover up the false arrest and abuse of process which had been inflicted by Defendants on Plaintiff. Defendants lacked probable cause to charge, arrest and seize Plaintiff.

111.    Such actions were malicious, intentional, negligent, reckless, callous, unreasonable and unauthorized, as Defendants had a duty not to subject Plaintiff to having a gun pointed to her head,  the use of excessive force by grabbing Plaintiff from her home, throwing her to the ground, and then fabricating evidence, making false statements against her, falsely arresting her, were in violation of 42 U.S.A. §1983.

112.    Defendants acted under color of law to deny Plaintiff her Constitutional rights of due process and freedom from seizure by wrongfully detaining her under the threat of imprisonment without providing any reasonable basis or investigation warranting prosecution, or other due process guarantees secured to Plaintiff. Defendants detained and arrested Plaintiff without any probable cause and therefore lacked any proper legal authority to arrest and prosecute Plaintiff.

113.     On February 15, 2023, the false charges of Obstruction of Governmental Administration -2, Following Too Closely, Signal Less than 100 feet, and Equipment Violation: Obstructed Vision alleged against Ms. DOWLING by Defendant Officers to cover-up their unnecessary and excessive force were dismissed and sealed.

114.     As a consequence of Defendants' wrongful actions, negligent behavior, and violation of federal laws, Plaintiff was required to be subject to the jurisdiction of the Court, having to appear in Court multiple times, deprived of her freedom, made to suffer injuries, and subjected to great fear, terror, personal humiliation, and degradation.  Plaintiff continues to suffer mental and emotional distress as a result of the aforesaid unlawful conduct of Defendants.

115.     That by reason of the foregoing, Plaintiff has been damaged in excess of five million ($5,000,000.00) dollars, as well as punitive damages, costs, and attorney's fees.

### AS AND FOR A THIRD COUNT
### 42 U.S.C. § 1983- MUNICIPAL LIABILITY

116.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 115 of this Complaint with the same force and effect as if the same were fully set forth herein.

117.     By actively inflicting, and failing to prevent, the above stated abuses incurred by Plaintiff, all of the Defendants acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of the Plaintiff against unlawful use of excessive force, physical abuse, detained custody and other due process violations.  Said rights are guaranteed to the Plaintiff by 42 U.S.C. § 1983, and by the Fourteenth Amendment of the United States Constitution.

118.    Both before and after March 19, 2021, SUFFOLK COUNTY and Defendants SCPD have systematically failed to identify the improper abuse, misuse, and violative acts by police officers and officials, while further failing to subject such officers and officials to discipline, closer supervision, and/or restraint.

119.    Upon information and belief, regarding all Defendants, the   misconduct review process includes but is not limited to the following:

a.    Preparing reports regarding investigations of unwarranted incidents as routine point-by-point justification of the police officers actions regardless of whether such actions are justified;

b.    Police officers investigating unwarranted incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;

c.    Police officers investigating unwarranted incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;

d.    Supervisory police officers exonerate police officers for misconduct and abuse of process before the investigation of the incident by the police department has been completed;

e.    Reports in brutality cases are not reviewed for accuracy by supervisory officers. Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

f.    The County of Suffolk hastily accepts the allegations of police in light of clear evidence of civilians' innocence, and accepts the allegations as provided  from police reports regarding excuses for abuses and civil rights infringements, despite strong evidence to suggest that the police reports are inaccurate, untruthful, and meant to conceal blatant police misconduct.

120.    The foregoing acts, omissions, systemic flaws, policies and customs of Defendants SUFFOLK COUNTY and SCPD encouraged and condoned Defendants SANDTORV and PERNA to believe that brutality and other improper actions would not be aggressively, honestly and properly investigated, with the foreseeable result that officers are most likely to use excessive force in situations where such force is neither necessary nor reasonable.

-27-

121.    As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies, practices and customs of Defendants SUFFOLK COUNTY and SCPD, Officers SANDTORV and PERNA unjustifiably beat and brutalized Plaintiff DOWLING, all in violation of her civil and constitutional rights. Plaintiff DOWLING was seriously injured, was subjected to great fear, terror, personal humiliation and degradation, and suffered and continues to suffer physical pain and impairment, mental and emotional distress, as a result of the aforesaid unlawful conduct of Defendants. This is an ongoing pattern of behavior adopted and condoned by Defendants SUFFOLK COUNTY, SCPD, SANDTORV and PERNA .

122.    Defendants SUFFOLK COUNTY and SCPD were reckless, careless, intentional, negligent, and/or deliberately indifferent in the training, hiring, administration, discipline and supervision of the police officers, including Defendants SANDTORV and PERNA, with respect to the use of excessive force and intervening when fellow officers utilize unlawful excessive force on citizens.

123.    The COUNTY has failed to find that civilian complaints made against police OFFICERS are founded or valid in anyway. Therefore the COUNTY is liable under 42 U.S.C. § 1983 because the COUNTY has had actual and/or constructive knowledge of the patterns of abuse against civilians by SCPD Officers, employees, and/or agents in violation of the United State Constitution.

124.    Because of the COUNTY and SCPD's weightless policy and custom for reviewing complaints of misconduct against the Defendant Officers, Officers SANDTORV and PERNA relied upon that flawed policy to continue their patterns of physical and mental abuse, and discriminatory, ungrounded legal enforcement in violation of the Plaintiff's rights.

125.     The COUNTY and SCPD have maintained a system of review of unjustified abuses, discriminatory actions and inactions by Police Officers including encouraging criminal behavior and failing to provide medical assistance, that has failed to identify the improper and callous discriminatory conduct of Police Officers and failed to subject SCPD Officers who abused citizens to discipline, closer supervision, or restraint to the extent that it has become the custom of the COUNTY to tolerate the improper abuses, discriminatory policing, discriminatory enforcement of laws, encouragement of criminal behavior, beatings, illegal arrests and other wrongful actions and inactions by SCPD Officers.

126.     When the community reports being subjected to excessive force at the hands of Defendant SCPD and an internal investigation is conducted by Defendants upon themselves, very little has been implemented to change, check or curb the unwarranted mental and physical abuses inflicted upon citizens by the Police Officers of SCPD.

127.     According to the annual Compliance Reports relating to Defendant COUNTY OF SUFFOLK and prepared by Defendant SCPD, the data reveals the findings in percentages of IAB (Internal Affairs Bureau) cases for the years of the reports. Of note, most of the IAB cases lead to findings of no charge and very few cases are found substantiated. Many times unsubstantiated findings are a result of Defendants COUNTY and SCPD's refusal to seek or accept certain witnesses and videos. The following chart sets out the findings of SCPD IAB in Complaints lodged against members of the SCPD in the years 2016 through 2020[2].

---

[2] These numbers are relevant as the reason for the abuses visited on Plaintiff is her association with Black men.  As stated by Defendant that she as a white woman and her relationships, was a "sell out".

| Year | Substantiated | Unsubstantiated | Exonerated | Unfounded |
|------|---------------|-----------------|------------|-----------|
| 2016 | 22% | 28% | 50% | 0% |
| 2017 | 18% | 32% | 41% | 9% |
| 2018 | 6% | 32% | 43% | 19% |
| 2019 | 14% | 27% | 43% | 16% |
| 2020 | 7% | 28% | 46% | 19% |

128.    Defendant COUNTY has failed to respond to the continuing and urgent need to prevent, restrain, and discipline police officers who wrongfully, abuse authority, and abuse civilians, and Defendant COUNTY has failed to find that civilian complaints made against police officers are founded or valid in any way. Therefore, Defendant COUNTY is liable under 42 U.S.C. §1983 because the Defendant COUNTY has had actual and/or constructive knowledge of the patterns of abuse, failure to intervene and other disparate treatment against citizens by its police officers, employees, and/or agents in violation of the United State Constitution, and because of the Defendant COUNTY'S, and Defendant SCPD's un-meaningful policy and custom for reviewing complaints of misconduct against its Officers, the Defendant Officers SANDTORV and PERNA relied upon that flawed policy to continue the patterns of their abusive authority, physical abuse, excessive force, and false arrests, all in violation of Plaintiff's rights.

129.    The foregoing acts, omissions, systemic flaws, policies and customs of Defendants COUNTY and SCPD caused the Defendant Officers SANDTORV and PERNA to believe that discriminatory abuses including exacerbating an already violent circumstance and selective enforcement of laws and other improper actions would not be aggressively, honestly and properly investigated, with the foreseeable result that OFFICERS are most likely to abuse a process where

there are no repercussions for their illegal acts and omissions.

130.    As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies, practices and customs of the Defendants COUNTY and SCPD, and POLICE OFFICERS SANDTORV and PERNA, collective Defendants unjustifiably allowed, encouraged and condoned the abuses, assault, harassment and false arrest of Plaintiff, an American citizen, in violation of her civil and constitutional rights. Plaintiff has and continues to suffer from injury, psychological harm, mental distress, humiliation, embarrassment, fear and being prevented from attending to her usual duties and her life as a citizen in the manner she was preceding these incidents.

131.    Defendants COUNTY, and SCPD were reckless, careless, intentional, negligent, and/or deliberately indifferent in the training, hiring, administration and supervision of POLICE OFFICERS SANDTORV and PERNA with respect to the active and tacit encouragement of the continuation of the violence, abuses, assault, harassment, false arrest  and lack of intervention and protection of Plaintiff.

132.    That by reason of the foregoing, Plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages against PERNA and SANDTORV, costs and attorneys fees, and any other relief this Court may find just and proper.

### AS AND FOR A FOURTH COUNT,
### 42 U.S.C. § 1983 - FIRST AND FOURTEENTH AMENDMENT,
### VIOLATIONS OF PLAINTIFF'S FREEDOM OF ASSOCIATION

133.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 132 of this Complaint with the same force and effect,  as if same were fully set forth herein.

134. The wrongful conduct against Plaintiff by Defendants SANDTORV and PERNA, in their individual capacities, caused a deprivation of Plaintiff's rights, privileges, and/or immunities secured by the First and Fourteenth Amendment of the United States Constitution. Defendants violated Plaintiff's Rights to freedom of association and discriminated against Ms. DOWLING based upon her association with Mr. Cooper, a Black man.

135. Defendants SANDTORV and PERNA constantly and consistently harassed Ms. DOWLING based upon her relationship with a Black man. The animus against Ms. DOWLING because of her relationship with a Black man was initially revealed when Officer PERNA referred to Ms. DOWLING as a "Sell Out" in October of 2019 and continues.

136. The unjustified harassment of Ms. DOWLING continued and included traffic stops with false accusations of marijuana usage with Ms. DOWLING's daughter in the car, a gun being pointed at Ms. DOWLING's head by SCPD Officer PERNA, being forcibly pulled from her home and thrown to the ground by SCPD Officer SANDTORV, being held in a police station for eight (8) hours, an internal investigation by Defendants which failed to find any wrongdoing on the parts of its Officers, and Plaintiff having to fight false criminal charges, all brought upon PLAINTIFF because of Defendants animus towards Ms. DOWLING due to her relationship with a Black man.

137. As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies, practices and customs of the Defendants COUNTY, SCPD and POLICE OFFICERS SANDTORV and PERNA, collective Defendants unjustifiably allowed, encouraged and condoned the abuses, assaults, battery, harassment and false arrest of Plaintiff, in violation of her civil and constitutional rights to lawfully associate with a Black man. Plaintiff has suffered and continues to suffer from injury, psychological harm, mental distress, humiliation, embarrassment, fear and being

prevented from attending to her usual duties and her life as a citizen in the manner she was preceding these incidents.

138.    Defendants COUNTY, and SCPD were reckless, careless, intentional, negligent, and/or deliberately indifferent in the training, hiring, administration and supervision of POLICE OFFICERS SANDTORV and PERNA with respect to the active and tacit encouragement of the continuation of the violence, abuses, assault, harassment, false arrest and lack of intervention and protection of Plaintiff in violation of her 1st and 14th Amendment Rights.

139.    That by reason of the foregoing, Plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages against PERNA and SANDTORV, costs and attorneys fees, and any other relief this Court may find just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following damages and relief:

a.    on the First Count in a sum in excess of FIVE MILLION ($5,000,000.00) DOLLARS;

b.    on the Second Count in a sum in excess of FIVE MILLION ($5,000,000.00) DOLLARS;

c.    on the Third Count in a sum in excess of FIVE MILLION ($5,000,000.00) DOLLARS;

d.    on the Fourth Count in a sum in excess of FIVE MILLION ($5,000,000.00) DOLLARS;

e.    Punitive damages in the amount of 100 MILLION ($100,000,000) DOLLARS;

f.    Award attorney's fees and costs of this action to the PLAINTIFF pursuant to 42 U.S.C. § 1988;

g.      Declaratory Judgment that defendants wilfully violated PLAINTIFF' rights secured
        by federal and state law as alleged herein;

h.      Injunctive relief, requiring Defendants to correct all past violations of federal and
        state law as alleged herein; to enjoin Defendants from continuing to violate federal
        and state law as alleged herein; and to order such other injunctive relief as may be
        appropriate to prevent any future violations of said federal and state laws;

I.      Award such other and further relief as this Court may deem appropriate.


### *A JURY TRIAL IS HEREBY DEMANDED*

Dated: July 6, 2023
        Hempstead, New York


                                Respectfully submitted,

                                THE LAW OFFICES OF
                                FREDERICK K. BREWINGTON

                        By:     _____
                                ALBERT D. MANUEL III
                                *Attorneys for PLAINTIFF*
                                556 Peninsula Blvd
                                Hempstead, New York 11550
                                (516) 489-6959